Appendix A: Sample Complaint and Civil Cover Sheet

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

## PRO SE CIVIL COMPLAINT

Case No. 1:13-cv-00159-GZS
(the court will assign a number)

2013 APR 25 P 2: 2

## I.   CASE CAPTION: Parties to this Civil Action:

Pursuant to Fed. R. Civ. P. 10(a), the names of **all** parties must appear in the case caption.
The court will **not** consider a claim against any defendant who is not listed in the caption.

1.   Plaintiff(s) Name(s):   Address(es):   Telephone No. (only if **you are NOT** a prisoner)

     Alice Bainton                          (207) 540-1245

     104 Dudley St.,

     Presque Isle, Maine 04769


2.   Defendant(s) Name(s):                  Address(es) If known:

     Veterans Administration Medical Center

     950 Campbell Ave.,

     West Haven, Connectifut 06516

(Attach extra sheets if necessary.)

## II. STATEMENT OF CLAIM(S)

State briefly the facts of your claim. Describe how each defendant is involved. You do not need to give legal arguments or cite cases or statutes. Use as much space as you need to state the facts. (Attach extra sheets if necessary.)

1. **When** did the events occur?

    4/13/2010 through 4/20/2010

2. **What** happened?

    My husband, Herbert Woodruff Bainton, had recovered from a urinary tract infection, on T4E and Dr. Seth, Senior Physician on that Unit, advised that he should be discharged on either 4/5/2010 or 4/6/2010. My husband and I both agreed with this plan. Then, a Staff Member, from T3W, Bldg. II, visited his bedside and argued that Herb would benefit from Rehabilitation Work on her Unit, T3W, before being discharged back to the Nursing Home where he had been a resident. A former co-worker in the Rehab Unit agreed that this would be a good idea as long as Herb was a patient on the Rehab Wing of T3W, rather than the Palliative Care Wing of T3W. A conference was held, at which time I stressed the fact that Herb wanted to return to the V.A. Contract Nursing Home, after some Rehabilitation Work. An Aide on 4E, Bldg. I, warned, "Do not let him go to that Unit, they will kill him, there." A young Dr. Fitter, who was a Yale New Haven Hospital Resident-Intern seemed to have replaced Dr. Set, whom I could not reach. Herb was transferred to the Rehab Unit. On the Rehabilitation Wing of T3W, Herb was making progress. He was eating most of the deliciously prepared pureed food; looked forward to

25

## II. STATEMENT OF CLAIM(S) (continued)

transferring to a lounge chair and going into the communal area, where he could be with other patients. With some difficulty, he was, still, able to communicate verbally. On 4/20/2010, he was preparing to celebrate his birthday with the sharing of an icecream birthday cake, which I had brought to the hospital. I had been living at the hospital, night and day. April 20th was the first, beautiful Spring Day. I stepped outside. To my horror and dismay, upon returning to the hospital, I discovered that he had been transferred to the Palliative Care Wing. I was told that he had become very ill, was vomiting with the lunchtime meal, had a fever and blood was found in his urine. I demanded that he be transferred back to 4E, Bldg. I, or, the ER, for intensive antibiotic treatment, or that an I.V. tree for delivery of continuous anti-biotic treatment be established, immediately at his bedside. (The Night Supervisor had established the fact that Herb had a second urinary tract infection.) Instead, the staff insisted that he be given a subcutaneous, antibiotic injection, once each day. (Obvious to everyone was the fact that it was ineffective.) Herb had an extremely strong constitution and his body was fighting hard to throw off the second urinary tract infection. On 4/23/2010, at the breakfast meal, an Aide was helping him to consume a bowl of oatmeal, which he seemed to enjoy eating and was without swallowing problems. I stepped out of the room, briefly, in order to have a cup of coffee, in the cafeteria. To my horror and dismay, I was told that he had begun vomiting, again, and that, now, he was completely unable to swallow, upon return to the Unit. A second conference had been held, at which time, I forcefully, insisted that Herb wanted to live and that if necessary, a stomach tube should be inserted The three people at the conference did not acknowledge what I was saying and by way of response, the Head of the Unit, in a well-rehearsed manner, repeated over and over,

(cont.)

"Death will be painless." An R.N. on the Unit announced, in a well-rehearsed manner, "We will, now, begin giving him shots of morphine, which will shut down his organs, one by one." My protests went unheeded. Still, Herb was aware of everything that was going on and when I was in a phone conversation talking with our daughter, Cindy, and saying that Daddy wanted to live, Herb nodded in assent. I had been told that I could no longer stay at the hospital at night. On 4/27/2010, an i.v. tree for the delivery of antibiotics had been established at his bedside. He seemed to be more comfortable. However, about 2:30 A.M., on 4/29/2010, daughter, Gwen called me at home to say that Daddy had died. I was instructed to return to the hospital in order to view the body in the morgue. I waited in the hallway of T3W, for the arrival of the Aide who would take me to the morgue. After waiting for quite some time, I was told that Herb was, still, in his room, on the Unit. I rushed down to Rm 119. I found Herb's head to be icy cold but the rest of his body was as warm as that of a living person. There was movement in his chest. In October of 2012, I was told by an apparent witness that Herb had been electrocuted.

## III. STATEMENT OF JURISDICTION

Check any of the following that apply to this case (you may check more than one):

✓ United States or a federal official or agency is a party

Claim arises under the Constitution, laws or treaties of the United States

Violation of civil rights

Employment discrimination

Diversity of Citizenship (a matter between citizens of different states in which the amount in controversy exceeds $75,000)

Other basis for jurisdiction in federal court (explain below)

_____

_____

_____

_____

_____

## IV. STATEMENT OF VENUE

State briefly the connection between this case and Maine. For example, does a party reside or do business in Maine? Is a party incorporated in Maine? Did an injury occur in Maine? Did the claim arise in Maine?

I, Alice Bainton, the widow of Herbert Bainton, am now living in Maine.

_____

_____

## V. RELIEF

State briefly what you want the court to do for you.

I believe that medical practices carried out on T3W, Bldg. II VAMC, West Haven, CT. are illegal, cruel and inhuman. These practices should be, immediately, terminated and some type of disciplinary action should be taken so that these practices will not be reinstated, in another location. The Veterans Administration should reassess its methods of accreditation and investigation. For our loss and suffering, we should be compensated, ($8,000,000.)

## VI. EXHAUSTION OF ADMINISTRATIVE PROCEDURES

Some claims, but not all, require exhaustion of administrative procedures. Answer the questions below to the best of your ability.

1. Have the claims which you make in this civil action been presented through any type of administrative procedure within any state or federal government agency?

    Yes X          No

2. If you answered yes, state the date your claims were so presented, how they were presented, and the result of that procedure:

    Standard Form 95 (Rev. 2/2007) was sent to Edward J. Carney, in Bedford, Massachusetts, who is the General Counsel for the V.A. in New England, on 4/25/2012. As a result, I have received two letters from Cynthia L. Tyler, Legal Counsel for VAMC, West Haven, CT.

3. If you answered no, give the reasons, if applicable, why the claims made in this action have not been presented through administrative procedures:

28

VII. ARE YOU REQUESTING TRIAL BY A JURY OR BY A JUDGE? (check one):

JURY      (JUDGE)

VIII. VERIFICATION

I (we) declare under penalty of perjury that the foregoing is true and correct.

Date(s) Executed:          Signature(s) of Plaintiff(s):

April 24, 2013             Alice Bainton

Note:

IF YOU CANNOT AFFORD TO PAY THE COURT'S FILING FEE UPON THE FILING OF YOUR COMPLAINT, THERE IS A SEPARATE FORM TO BE USED FOR APPLYING TO PROCEED IN FORMA PAUPERIS. Also, if there is more than one plaintiff in the case who wishes to proceed *in forma pauperis*, **each such plaintiff must submit a separate application to proceed *in forma pauperis*.**

29